UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHANE WILLIAMS,

    Plaintiff,

vs.                                 Case No.: 3:22cv796/LAC/ZCB

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is a Social Security appeal under 42 U.S.C. § 405(g). Plaintiff Shane Williams seeks judicial review of the Commissioner's final decision denying his claims for social security disability insurance and supplemental security income. For the reasons below, this matter should be remanded for further proceedings.

### I.    **Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security income on November 13, 2019, with an alleged onset date of July 1, 2019. (Tr. 15).[1] The Social Security Administration denied his applications. (Tr. 15, 203-16, 220-

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr." The page numbers cited herein are those found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the Court's electronic docketing system.

1

45). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on August 10, 2021. (Tr. 37-73). On August 25, 2021, the ALJ found that Plaintiff was not disabled. (Tr. 15-31). The Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The ALJ's decision stands as the final decision of the Commissioner, and Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II.   The Legal Framework

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential process to determine whether a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(1), 416.920(a)(4)(i). If so, the Commissioner will find that the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). To be

disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c); 416.920(c).

Third, the Commissioner evaluates whether the claimant's severe impairment meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past relevant work. *Id.* §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work in the national economy. *Id.* §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that she cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III.   The ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2019. (Tr. 17, Finding 2). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the cervical spine; status-post left shoulder surgery for bilateral shoulder fractures and dislocation; status post fractures of the right humerus, right clavicle, right scapula, or ribs, and little finger on right hand; hypertension; obesity; and neurocognitive disorder." (Tr. 17, Finding 3).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18, Finding 4). The ALJ then found that Plaintiff had the residual functional capacity to perform light work, with the following restrictions:

> The claimant can occasionally reach overhead with the bilateral upper extremities. He can frequently reach in other directions with the dominant right arm. He can frequently climb stairs, but he cannot climb ladders. He can frequently balance, stoop, and kneel. He can occasionally crawl. The claimant is limited to performing spoken or oral communication on no more than a frequent basis. He can tolerate frequent exposure to vibration, unprotected heights, and moving mechanical parts. The claimant is limited to performing simple and routine tasks, which is further described as unskilled work with a Reasoning Level of 3 or less as defined in the *Dictionary of Occupational Titles*.

(Tr. 21-22, Finding 5). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 29, Finding 6). At step five, the ALJ concluded there were jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 30, Finding 10). Relying on testimony by the Vocational Expert, the ALJ found that Plaintiff could work as a bakery worker conveyor (DOT 524.687-022), laundry sorter (DOT 361.687-014), and folder (DOT 369.687-018). (Tr. 30-31). Based on these findings, the ALJ concluded that Plaintiff was not disabled. (Tr. 31, Finding 11).

### IV. Standard of Review

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). It is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up). Indeed, the Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (cleaned up); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It requires "more than a mere scintilla, but less than a

preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (internal quotations omitted). Put another way, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8 (internal quotations omitted). If, however, the ALJ's conclusion is unsupported by analysis and explanation, then the matter should be remanded for further proceedings. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013). A reviewing court should not "merely rubber-stamp" an ALJ's decision and, instead, "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (internal quotations omitted).

## V.  Discussion

Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff can perform occasional overhead reaching and can frequently reach in other directions with his right arm.[2] (Doc. 16 at 16-21). Plaintiff

---

[2] Plaintiff's brief raises three assignments of error. Plaintiff's second and third assignments of error both address the same issue (the ALJ's conclusion that Plaintiff can perform certain reaching functions despite his severe shoulder impairments). Thus, the Court will address them together. Because remand is required on that combined issue, it is unnecessary for the Court to address Plaintiff's remaining

claims the record compels further limitations. According to Plaintiff, his shoulder impairments preclude any overhead reaching, as well as frequent reaching in other directions with his right arm. (Doc. 16 at 19).

A claimant's residual functional capacity is an assessment of the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1520(e), 416.945(a)(1), 416.920(e). This assessment is reserved for the ALJ and is to be based on all the relevant evidence of a claimant's remaining ability to work despite his or her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a)); *see also* 20 C.F.R. § 416.945(a)(3) ("[Y]our residual functional capacity [will be] based on all of the relevant and other medical evidence."). The ALJ's residual functional capacity assessment must be sufficiently explained and supported by substantial evidence. *Crawford v. Comm. of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

---

assignment of error—a challenge to the ALJ's evaluation of Plaintiff's subjective complaints of pain. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (finding it unnecessary to address remaining issues because remanding on one issue); *see also Tammy C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00074, 2021 WL 9666636, at *13 n.26 (N.D. Ga. Sept. 30, 2021) (stating that "since remand is required for further proceedings that could impact the ALJ's assessment of the other issues raised…the Court need not address the remaining issues").

### A. The information in the record regarding Plaintiff's shoulder injuries.

The medical record in this case clearly establishes that Plaintiff has a history of problems with both shoulders. Those problems began when Plaintiff broke and dislocated both shoulders while having a seizure. (Tr. 445). A physician who examined Plaintiff's shoulders in the hospital at the time of his injury described the damage as "severe." (Tr. 526).[3] The physician opined that, once Plaintiff was stabilized, he would need surgery on his shoulders "1 at a time." (*Id.*). Plaintiff later had reconstructive surgery on his left shoulder on November 4, 2015. (Tr. 24, 445-47).

During his post-surgical follow-up appointment on January 28, 2016, Plaintiff indicated he was doing well and that his pain was under control. (Tr. 439). At that time, Plaintiff had "very good" internal and external rotation of his left shoulder. (Tr. 440). He also had good forward flexion[4] and extension. (*Id.*). He was able to lift his left arm to approximately 90 degrees. (*Id.*). By May 31, 2016, Plaintiff's range of motion in his left shoulder had improved. (Tr. 442). He reported that he was happy with the result of the surgery, and he was even able to do tasks around

---

[3] The orthopedic surgeon who eventually operated on Plaintiff's left shoulder also described his injuries as "extremely severe." (Tr. 446).

[4] Flexion refers to Plaintiff's ability to bend his arm. *See* Ida G. Dox et al., *Attorney's Illustrated Medical Dictionary* F22 (West 1997) ("flexion").

the house, like mowing the lawn. (*Id.*). He was able to abduct[5] to 90 degrees and forward flex to 90 degrees. (Tr. 443).

Despite the injury to it, Plaintiff has yet to have his right shoulder surgically repaired due to the cost. (Tr. 49, 57; Doc. 16 at 9). But the record is clear that Plaintiff suffered a severe injury to his right shoulder. A CT scan of Plaintiff's right shoulder on July 31, 2015, showed a fracture and bone fragments in the joint capsule. (Tr. 582). There was also fluid build-up in his right shoulder. (*Id.*). Plaintiff has complained of pain and a limited range of motion in his right shoulder. (Tr. 1099, 1102).

On July 30, 2020, Plaintiff was seen by Social Security consultative examiner Osama Elshazly, M.D. (Tr. 1099-1104). During the examination, Plaintiff complained of pain in both shoulders. (Tr. 1099). He stated that, at times, he could not hold an object in his right hand and experienced decreasing grip in his left hand. (*Id.*). He also reported decreased range of motion in both shoulders. (*Id.*). Plaintiff also complained of numbness in his hands. (*Id.*). Upon examination, Dr. Elshazly noted the following range of motion limitations in Plaintiff's shoulders:

---

[5] Abduction refers to Plaintiff's ability to move his limb "away from the median plane of the body or a digit away from the axial plane of a limb." Dox, *supra* note 4, at A1.

| MOTION | NORMAL RANGE | RIGHT | LEFT |
|---|---|---|---|
| Forward Elevation | 0°-150° | 75° | 100° |
| Abduction | 0°-150° | 50° | 100° |
| Adduction[6] | 0°-30° | 20° | 20° |
| External Rotation | 0°-90° | 45° | 60° |
| Internal Rotation | 0°-80° | 40° | 40° |

(Tr. 1102). Additionally, Dr. Elshazly stated that Plaintiff had "decreased mobility in abduction and rotation" in his right shoulder, as well as a "tender" left shoulder "with decreased range of motion in abduction and external rotation." (Tr. 1100). Dr. Elshazly noted that Plaintiff suffered from "chronic right shoulder pain" and "chronic left shoulder pain." (*Id.*). Dr. Elshazly opined that these conditions "may affect [Plaintiff's] daily activities and finding a job." (Tr. 1101).

At the hearing, Plaintiff complained of pain in both arms while reaching at various levels. (Tr. 49, 52, 61-62). He testified that it would be difficult for him to reach for a stapler, grab a phone, or type while sitting at a desk. (Tr. 61-62). Plaintiff explained that due to his shoulder issues he was unable to reach overhead, even if it was to grab a $1,000,000 check from an overhead cabinet. (Tr. 62).

---

[6] Adduction is the opposite of abduction. It refers to Plaintiff's ability to move his limb towards the median plane of his body. Dox, *supra* note 4, at A15.

### B. The ALJ's residual functional capacity determination.

The ALJ concluded Plaintiff had the following severe impairments relating to his shoulders: "status-post left shoulder surgery for bilateral shoulder fractures and dislocation; status post fractures of the right humerus, right clavicle, right scapula." (Tr. 17). The ALJ found that Plaintiff had the residual functioning capacity "to perform light work" that included "occasionally reach[ing] overhead with the bilateral extremities" and "frequently reach[ing] in other directions with the dominant right arm." (Tr. 21). Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff could reach overhead with both arms, do frequent reaching in other directions with his right arm, and have no restrictions on reaching in other directions with his left arm. Relatedly, Plaintiff claims the ALJ failed to account for Plaintiff's range of motion limitations when he arrived at the residual functional capacity and posed hypotheticals to the Vocational Expert. The Court agrees.

A review of the record demonstrates that the ALJ's conclusion that Plaintiff could "occasionally reach overhead" with both arms is not supported by substantial evidence. The ALJ failed to sufficiently explain how such a residual functional capacity could be reconciled with Dr. Elshazly's findings regarding Plaintiff's limited range of motion. Although the ALJ referenced Dr. Elshazly's consultative examination, the ALJ did not discuss Dr. Elshazly's findings regarding Plaintiff's

range of motion. (Tr. 27, 28, 29). The failure to include such a discussion is problematic given the conflict between the ALJ's conclusion and Dr. Elshazly's findings.

Dr. Elshazly found that Plaintiff's forward elevation was only 75° out of 150° in his right arm and 100° out of 150° in his left arm. (Tr. 1102). Forward elevation refers to the "movement of the arm from a neutral (straight down) position, such that it swings upward in front of, and perpendicular to, the plane of the torso." Dan J. Tennenhouse, 1 *Attorneys Medical Deskbook* § 12:3 (4th ed. 2022). If Plaintiff is only able to forward elevate his right arm 75°, then—at most—Plaintiff can bring his arm nearly straight out in front of him. He would not be able to reach overhead with his right arm.[7] Similarly, if Plaintiff can only forward elevate his left arm 100°, he is unlikely to be able to reach up over his head. Moreover, the significantly reduced abduction (50° out of 150°) noted by Dr. Elshazly for Plaintiff's right arm is inconsistent with the ALJ's conclusion regarding Plaintiff's reaching abilities.

---

[7] Notably, other ALJ's have restricted claimants with higher degrees of forward elevation to no overhead reaching. *See, e.g.*, *Brown v. Kijakazi*, No. 20-C-640, 2021 WL 4191481, at *5, *7-8 (E.D. Wis. Sept. 15, 2021) (forward elevation was measured at 90°); *Potts v. Colvin*, No. 2:13-cv-2210, 2015 WL 3547058, at *3, *6-8 (W.D. Ark. June 8, 2015) (forward elevation of 90°); *Sink v. Colvin*, No. 1:12-cv-239, 2015 WL 3604655, at *7-8, *14 (W.D.N.Y. June 8, 2015) (finding the claimant could "never reach overhead with the right upper extremity" when forward elevation was limited to 110°).

12

Although the ALJ is not required to adopt or accept Dr. Elshazly's clinical findings, the ALJ cannot fail to discuss or engage with evidence that does not support his decision. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (finding the ALJ's decision was not supported by substantial evidence because the ALJ focused on one aspect of the evidence and ignored contrary evidence); *Gaskin v. Comm'r of Soc. Sec.*, 533 F. App'x 929 (11th Cir. 2013) (holding remand was required when the ALJ failed to address a doctor's assessment). At the very least, the ALJ should have explained why he was unpersuaded by Dr. Elshazly's clinical findings—clinical findings that are not rebutted by examinations conducted by any other physicians.[8] Absent such an explanation, the court is unable to exercise meaningful judicial review. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If

---

[8] The ALJ briefly mentioned some of Dr. Elshazly's findings, but noticeably absent was any discussion of Dr. Elshazly's findings regarding Plaintiff's range of motion in his shoulders. (Tr. 27). The ALJ did, however, state that two state agency physicians had conducted an administrative review of Plaintiff's medical records and determined he could "reach overhead occasionally with the bilateral upper extremities." (Tr. 28). The ALJ provided no explanation regarding the inconsistency between that statement from the state agency reviewers and the range of motion findings made by Dr. Elshazly—a Social Security medical consultant who actually examined Plaintiff. *See generally Grier v. Colvin*, 117 F. Supp. 3d 1335, 1354-55 (N.D. Ala. 2015) ("When the opinion of an examining physician is compared with an opinion of a non-examining physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician.") (cleaned up).

relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."). Remand is, therefore, warranted.

It bears mentioning that other district courts have remanded when confronted with similar situations. *See, e.g.*, *O'Connor v. Kijakazi*, No. 4:21-cv-1077, 2022 WL 4348465, at *6, *10 (M.D. Pa. Sept. 19, 2022) (remanding because the ALJ's overhead reaching determination was not supported by substantial evidence where an examining physician determined plaintiff's "range of motion is limited to 80 degrees of forward elevation and 75 degrees of abduction"); *Rebecca L.B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-425, 2021 WL 2548596, at *3 (W.D.N.Y. June 22, 2021) (remanding because the ALJ failed to adequately explain the lack of an overhead reaching limitation where the record showed the plaintiff had reduced degrees of forward elevation and abduction).

The Commissioner's arguments in support of the ALJ's decision are unpersuasive. The Commissioner urges the Court to give "no credence" to a chart in Plaintiff's brief illustrating Dr. Elshazly's clinical findings. (Docs. 16 at 18 (chart); 17 at 22-23). Defendant takes issue with the chart's categories of "poor" to "excellent" and claims these characterizations amount to nothing more than a lay interpretation of the medical evidence. (Doc. 17 at 22-23). But the Court need not rely on the chart, the categories, or the characterizations to conclude that if Dr. Elshazly's range of motion findings are accurate, then Plaintiff cannot reach

14

overhead. Defendant's argument that Dr. Elshazly never explicitly stated that Plaintiff is unable to reach overhead is also unpersuasive. While Dr. Elshazly may not have provided a precise opinion regarding specific functional limitations, his findings speak for themselves—a person who cannot forward elevate his arm more than 75° is necessarily unable to reach over his head. *See generally Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (rejecting the Commissioner's argument that the ALJ was not required to consider treatment notes, which included descriptions of the plaintiff's impairments, because they did not constitute a "medical opinion").

On remand, the ALJ should evaluate all relevant evidence when assessing Plaintiff's residual functional capacity, including the findings by Dr. Elshazly regarding Plaintiff's forward elevation and abduction. If the ALJ determines that the residual functional capacity does not require further limitations, then the ALJ must fully explain that decision and how it is consistent with other evidence in the record. If the ALJ determines that further restrictions are necessary, then the ALJ should proceed through the remaining steps of the sequential analysis to determine if Plaintiff qualifies for disability benefits.

## VI. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

1. **REVERSING** the Commissioner's decision and **REMANDING** this action to the Commissioner for further proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g); and

2. Directing the Clerk of Court to close the case file.

At Pensacola, Florida, this 23rd day of December 2022.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**